FILED IN CHAMBERS
U.S.D.C. Atlanta

FEB 15 2006

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DEREK CLINTON DENTON,

    Plaintiff,

v.

UNITED STATES OF AMERICA, et al.,

    Defendants.

CIVIL ACTION

NO. 1:04-CV-3285-RLV

O R D E R

This is an action brought pursuant to 42 U.S.C. § 1983, in which the plaintiff alleges deliberate indifference to his serious medical needs, as well as medical malpractice. Pending before the court are defendants Drew Abernathy, M.D. ("Abernathy") and Tenet Healthsystem GB, Inc.'s, ("Tenet"), motion to dismiss [Doc. No. 29]; the plaintiff's motion to amend the briefing schedule and motion for partial stay of proceedings [Doc. Nos. 38 and 39]; the plaintiff's motion for partial summary judgment against the United States [Doc. No. 56]; the United States's motion to continue and/or motion to deny without prejudice the plaintiff's motion for partial summary judgment [Doc. No. 86]; defendant Matthew J. Goldstein's motion to dismiss [Doc. No. 89]; and the plaintiff's motion to extend the time for discovery [Doc. No. 94].

**I. Factual Background**

The plaintiff filed this case on November 9, 2004, asserting

tort claims against the United States, five employees of the United States, and numerous private-sector defendants, along with claims against the five federal employees for alleged violations of his constitutional rights. The plaintiff then moved for numerous stays of the case so that he could exhaust administrative remedies under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, et seq., for his claims against the United States. The plaintiff subsequently elected to treat the lack of a final administrative decision from the Bureau of Prisons as a denial of his tort claim, and on October 14, 2005, he filed an Amended Complaint [Doc. No. 23].

In his Amended Complaint, the plaintiff brings § 1983 claims based on the alleged deliberate indifference of the defendants to his serious medical needs. Additionally, he alleges that the federal defendants violated the FTCA and Georgia law and that the federal and non-federal defendants committed medical malpractice.[1]

---

[1] In the plaintiff's Amended Complaint, the plaintiff alleges:

1. Plaintiff, a federal prisoner, claims that (a) prison administrators, on the stated ground that plaintiff's condition was not life threatening, overruled a prison physician's order that plaintiff be taken to a hospital emergency room for treatment of priapism (abnormal, painful erection of the penis); (b) for over two weeks thereafter, despite repeated recurrence of plaintiff's priapism, prison physicians, deterred by the administrators, failed to take plaintiff to a hospital, failed to consult an urologist, failed to monitor plaintiff's condition, failed to advise plaintiff to seek immediate treatment of recurrence, and failed properly to treat plaintiff's priapism when he came to the prison

2

The court will now address the pending motions seriatim.

## II. Motions to Dismiss

On October 28, 2005, defendants Abernathy and Tenant filed their motion to dismiss the plaintiff's complaint [Doc. No. 29]. The defendants argue that the court should dismiss the plaintiff's complaint because he failed to attach a medical authorization form required by O.C.G.A. § 9-11-9.2. On January 27, 2006, Matthew J. Goldstein, who was added to the suit by the plaintiff's Amended Complaint, filed his motion to dismiss incorporating by reference the arguments made by defendants Abernathy and Tenant.[2]

---

clinic; (c) in light of plaintiff's known need for emergency treatment by an urologist, the behavior of the prison administrators and physicians constituted not only negligence, but deliberate indifference to plaintiff's serious medical need, or intentional deprivation of needed medical treatment; and (d) their behavior caused plaintiff to suffer grievous injury, including permanent total erectile dysfunction (impotence).

2. Plaintiff claims that after prison staff took plaintiff to a hospital, negligent delay by the hospital physicians caused some additional tissue damage. Plaintiff claims that by the time prison staff took him to the hospital it was too late to prevent plaintiff from suffering permanent total erectile dysfunction; but he also claims, alternatively, that if delay by the hospital staff increased the degree of his permanent erectile dysfunction, the hospital and its staff are liable either for the increased injury they caused or, alternatively, for all of plaintiff's injury, jointly with the prison defendants, if responsibility cannot be apportioned.

[2]In his response to the plaintiff's motion for partial stay of proceedings, Goldstein states that he intends to file a motion to dismiss based on the fact that the plaintiff's claims against him are time-barred [Doc. No. 88]. However, Goldstein's motion to dismiss did not make any arguments based on the timeliness of the

O.C.G.A. § 9-11-9.2 provides:

(a) In any action for damages alleging medical malpractice against a professional licensed by the State of Georgia and listed in subsection (d) of Code Section 9-11-9.1, against a professional corporation or other legal entity that provides health care services through a professional licensed by the State of Georgia and listed in subsection (d) of Code Section 9-11-9.1, or against any licensed health facility alleged to be liable based upon the action or inaction of a health care professional licensed by the State of Georgia and listed in subsection (d) of Code Section 9-11-9.1, contemporaneously with the filing of the complaint, the plaintiff shall be required to file a medical authorization form. Failure to provide this authorization shall subject the complaint to dismissal.

(b) The authorization shall provide that the attorney representing the defendant is authorized to obtain and disclose protected health information contained in medical records to facilitate the investigation, evaluation, and defense of the claims and allegations set forth in the complaint which pertain to the plaintiff or, where applicable, the plaintiff's decedent whose treatment is at issue in the complaint. This authorization includes the defendant's attorney's right to discuss the care and treatment of the plaintiff or, where applicable, the plaintiff's decedent with all of the plaintiff's or decedent's treating physicians.

(c) The authorization shall provide for the release of all protected health information except information that is considered privileged and shall authorize the release of such information by any physician or health care facility by which health care records of the plaintiff or the plaintiff's decedent would be maintained.

The defendants argue that the plaintiff's Complaint and Amended Complaint should be dismissed since he failed to attach the

---

plaintiff's claims [Doc. No. 89]. Therefore, the court does not address the question of whether the plaintiff's claims against Goldstein are time-barred.

necessary medical authorization forms contemporaneously with the filing of his Complaint and Amended Complaint as required by O.C.G.A. § 9-11-9.2. Specifically, the defendants argue that (1) O.C.G.A. § 9-11-9.2 is a substantive Georgia state law which a federal court sitting in diversity must apply, (2) O.C.G.A. § 9-11-9.2 does not conflict with the Federal Rules of Civil Procedure, and (3) the failure to apply O.C.G.A. § 9-11-9.2 would lead to different outcomes in state and federal court and would result in inequitable administration of the law and in forum shopping.

In response, the plaintiff argues that he filed suit before O.C.G.A. § 9-11-9.2's effective date. Therefore, according to the plaintiff, his Amended Complaint relates back to the date the Original Complaint was filed, making O.C.G.A. § 9-11-9.2 inapplicable.[3] Alternatively, the plaintiff argues that even if O.C.G.A. § 9-11-9.2 required dismissal of cases pending on its effective date, the statute is inapplicable under <u>Erie R. Co. v. Tompkins</u>, 304 U.S. 64 (1938), because the sufficiency of complaints and discovery timing and methods are procedural matters controlled by the Federal Rules of Civil Procedure. The plaintiff argues that since O.C.G.A. § 9-11-9.2 conflicts with Rule 8(a) as well as other Federal Rules governing discovery, this court should not require him to comply with O.C.G.A. § 9-11-9.2.

---

[3]The plaintiff argued that O.C.G.A. § 9-11-9.2 did not operate retroactively to warrant dismissal of ongoing cases that were filed before the law became effective. This court agrees.

The Eleventh Circuit has not ruled on whether O.C.G.A. § 9-11-9.2's medical authorization form requirement is a matter of state procedural law or substantive law, or whether the requirements of O.C.G.A. § 9-11-9.2 conflict or are preempted by federal law. However, courts within this district have previously held that Georgia's expert affidavit requirement contained in O.C.G.A. § 9-11-9.1 does not apply in diversity actions filed in federal district courts.[4] See Baird v. Celis, 41 F.Supp.2d 1358, 1360 (N.D. Ga. 1999). Moreover, Judge Harold Murphy in Lawton v. Cohen, Civil Action No. 4:05-CV-0158-HLM, (N.D. Ga., October 20, 2005), recently concluded that the medical authorization forms required by O.C.G.A. § 9-11-9.2 are state procedural requirements that directly conflict with Rule 8(a). Consequently, Judge Murphy held that the medical authorization forms are not required to be filed with a complaint

---

[4] The Eleventh Circuit in Brown v. Nichols, 8 F.3d 770, 774 (11th Cir. 1993), did not determine whether the expert affidavit requirement of O.C.G.A. § 9-11-9.1 was a matter of state procedural or substantiative law. Instead, Brown held that a district court erred in dismissing a plaintiff's claims with prejudice for failure to attach an expert affidavit. The court in Brown stated:

> If § 9-11-9.1 does not apply in federal court, the district court should not have dismissed Brown's claims against Nichols and Kennestone Hospital with prejudice; her complaint clearly satisfied the requirements of Fed.R.Civ.P. 8. If § 9-11-9.1 does apply in federal court, the district court still should not have dismissed Brown's claims, but should have granted her leave to amend, because it was unclear when the action was filed that the requirement would apply. We therefore need not reach the question of whether § 9-11-9.1 actually applies in federal court. Either way, the district court erred.

6

when a federal court's jurisdiction is based upon diversity.[5] This court agrees with the Judge Murphy's decision in Lawton and reaches the same conclusion.

The United States Supreme Court has held that federal courts sitting in diversity actions have no constitutional authority to fashion a "federal general common law." Erie, 304 U.S. at 78. Instead, the Constitution requires federal courts sitting in diversity cases to apply the law of the states in which they sit. "According to Erie, however, it is clear that federal courts are bound only b[y] the substantive law of the states and not the state procedural rules." Baird, 41 F. Supp. 2d at 1359.

After Erie, the federal courts struggled in distinguishing between "substantive" requirements to which state law applied and "procedural" requirements that were governed by federal law. In Hanna v. Plumer, 380 U.S. 460 (1965), the United States Supreme Court clarified the lower courts' confusion. Specifically, the Supreme Court ruled that federal courts sitting in diversity should apply the Federal Rules in diversity cases, even though the Federal Rules may conflict with state laws that seem to have a substantive

---

[5] In this case, the plaintiff, a federal prisoner, alleges that this court has jurisdiction over his suit against the non-federal defendants based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. Specifically, the plaintiff alleges that he is a citizen of the State of Tennessee and each of the defendants is a citizen of a different State and that his claims against each of the defendants are for sums over $75,000, exclusive of interest and costs.

effect.

Although the Eleventh Circuit has not yet determined whether O.C.G.A. § 9-11-9.2's medical authorization requirement applies in federal diversity cases, the court concludes that O.C.G.A. § 9-11-9.2's requirement of a medical authorization form is a matter of state procedural law, rather than of state substantive law. Therefore, given the United States Supreme Court's rule in Hanna, this court concludes that Georgia's medical authorization requirement simply does not apply in this case.

Without O.C.G.A. § 9-11-9.2, Rule 8(a) would govern a plaintiff's medical malpractice complaint. Rule 8(a) requires only:

> (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for relief the pleader seeks.

On the other hand, O.C.G.A. § 9-11-9.2 requires that a plaintiff pursuing a medical malpractice claim attach a medical authorization to his complaint. The attachment of a medical authorization form creates a higher standard for plaintiffs seeking to initiate a medical malpractice action than the "notice pleading" standard imposed by Rule 8(a). Therefore, O.C.G.A. § 9-11-9.2 is

8

in direct conflict with Rule 8(a)'s notice pleading standard.[6] Because O.C.G.A. § 9-11-9.2 conflicts with Rule 8(a) and because O.C.G.A. § 9-11-9.2 is a state procedural law rather than a state substantive law, the court must apply Rule 8(a) in this case for the claims that this court has jurisdiction based on diversity, i.e., for the non-federal defendants. Therefore, the court denies defendants Abernathy, Tenet, and Goldstein's motions to dismiss [Doc. Nos. 29 and 89].[7]

### III. Motions to Amend Briefing Schedule and Motion for Partial Stay of Proceedings

On November 10, 2005, the plaintiff filed two motions to partially stay these proceedings [Doc. Nos. 38 and 39]. In his motions to amend the briefing schedule and for a partial stay of proceedings, the plaintiff argues that except for parties' briefing and the court's decision on the plaintiff's motion for partial summary judgment on the federal defendants' liability for negligence, all other proceedings should be stayed and deadlines

---

[6] Even if this court were to assume that O.C.G.A. § 9-11-9.2 was a matter of state substantive law, the court would have reached the same result, i.e. the denial of the defendants' motions to dismiss. A reading of O.C.G.A. § 9-11-9.2 leads the court to conclude that failure to attach a medical authorization form is an amendable defect.

[7] In reaching this decision, the court finds it unnecessary to evaluate whether O.C.G.A. § 9-11-9.2 is preempted by the Health Insurance Portability and Accounting Act of 1996 ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936(1996).

suspended.

To support the proposition that the proceedings should be partially stayed, the plaintiff argues that the federal defendants' liability for negligence may be determined now by a motion for partial summary judgment and that the determination of the federal defendants' liability to the plaintiff for negligence will eliminate the need for further participation in the case by the non-federal defendants. Moreover, the plaintiff argues:

> If the federal defendants are liable, they likely will be liable for all of the erectile dysfunction that plaintiff has suffered, either because all of the dysfunction was caused before the federal defendants sent plaintiff to the hospital or because accepted medical principles cannot separate the dysfunction that was caused by the federal defendants' many days of delay from that which was caused by the non-federal defendants' several hours delay.[8]

According to the plaintiff, "Staying proceedings against the non-federal defendants at this time will conserve the resources of the parties and the Court." In response, the non-federal defendants argue that they should have the opportunity to file dispositive motions based upon the plaintiff's admissions in his Complaint and Amended Complaint [Doc. Nos. 41, 45, and 88].

Having considered the parties' arguments, the court finds the plaintiff's motions to partially stay this matter and to suspend or

---

[8] The court notes that if the plaintiff has serious concerns about proving this case against some, or all, of the non-federal defendants, he should voluntarily dismiss his claim or claims against those parties rather than stay the matter.

10

amend the scheduling deadlines to be without merit. There is no reason why the non-federal defendants should be prevented from obtaining discovery and thereafter filing any appropriate dispositive motions, if necessary. Therefore, the court denies the plaintiff's motions to amend the briefing schedule and for a partial stay of the proceedings.

### IV. Plaintiff's Motion for Partial Summary Judgment against United States

After numerous stays, the United States filed an answer to the plaintiff's Amended Complaint on December 9, 2005. Just 13 days later, on December 22, 2005, the plaintiff filed a motion for partial summary judgment to hold the United States liable pursuant to the FTCA for compensatory damages for negligence that allegedly caused plaintiff's personal injury [Doc. No. 56].

In response to plaintiff's partial motion for summary judgment, the United States filed a motion to continue, stay, or deny without prejudice the plaintiff's motion for partial summary judgment [Doc. No. 86]. In support of its motion, the United States argues that the plaintiff's summary judgment filing is deficient and should be denied pursuant to Rule 56(f) and Local Rule 56.1 B(1). Specifically, the United States argues that the plaintiff's statement of material facts fails to comply with the minimal requirements of the Local Rules and as such cannot be considered in support of his motion for summary judgment because the plaintiff has failed to cite to the record. Alternatively, the

United States argues:

> Even if plaintiff's motion was in proper form, however, or if he could re-file his motion in proper form with citations to supporting evidence, the United States would be entitled to a continuance, stay, or dismissal without prejudice of plaintiff's motion until after defendant has been permitted to conduct discovery from plaintiff, plaintiff's witnesses, and the plaintiff's expert witness.[9]

Having considered the parties' submissions, the court concludes that denial of the plaintiff's motion for partial summary judgment is appropriate pursuant to Rule 56(f).

Rule 56(f) states:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

As the Eleventh Circuit explained in <u>Snook v. Trust Co. of Ga. Bank</u>

---

[9] In response, the plaintiff argues:

Defendant's memorandum does not even assert, let alone show, that defendant is ignorant of the essential facts relevant to plaintiff's partial summary judgment motion. It does not assert, let alone show, that defendant cannot learn facts "essential" to the motion without discovery from plaintiff. Any such assertions, moreover, would have no credibility.

As an alternative remedy to denial of his partial motion for summary judgment or stay or continuance, the plaintiff advocates that the court should allow the United States 30 days in which to respond substantively to his motion for partial summary judgment. Having carefully considered such proposal, the court declines to adopt the plaintiff's proposal because discovery is necessary to further develop the record in this case.

of Savannah, N.A., 859 F.2d 865, 870 (11th Cir. 1988):

> The party opposing a motion for summary judgment has a right to challenge the affidavits and other factual materials submitted in support of the motion by conducting sufficient discovery so as to enable him to determine whether he can furnish opposing affidavits. . . . If documents or other discovery sought would be relevant to the issues present by the motion for summary judgment, the opposing party should be allowed the opportunity to utilize the discovery process to gain access to the requested materials.

In fact, the Eleventh Circuit has noted that summary judgment should not generally be granted until the party opposing the motion has had an adequate opportunity for discovery. See Littlejohn v. Shell Oil Co., 483 F.2d 1140, 1145 (11th Cir. 1973)(noting the high fatality rate of summary dispositions at a time before the facts have been fully developed).

The United States argues that it "requires discovery of plaintiff, his proffered expert, and other witnesses he may identify in his mandatory initial disclosures (once filed) in order to fully and completely respond to the summary judgment motion, and to determine whether defendant can furnish opposing affidavits." The court agrees. Without discovery, the United States is unable to determine whether it can furnish opposing affidavits and other evidence to respond to the plaintiff's motion for summary judgment. Therefore, the plaintiff's motion for partial summary judgment

against the United States is denied without prejudice.[10]

## V. Conclusion

For the forgoing reasons, defendants Abernathy, Tenet, and Goldstein's motions to dismiss are DENIED [Doc. Nos. 29 and 89]; the plaintiff's motions to amend the briefing schedule and for a partial stay of proceedings are DENIED [Doc. Nos. 38 and 39]; the plaintiff's motion for partial summary judgment against United States is DENIED without prejudice [Doc. No. 56]; the United States's motion to continue and/or motion to deny plaintiff's motion for summary judgment without prejudice is GRANTED [Doc. No. 86]; and the plaintiff's motion to extend the time for discovery is GRANTED [Doc. No. 94].[11]

SO ORDERED, this 15TH day of February, 2006.

*Robert L. Vining, Jr.*
ROBERT L. VINING, JR.
Senior United States District Judge

---

[10] The court notes that it makes no judgment on the merits of the plaintiff's motion for partial summary judgment at this time. The plaintiff is free to re-file his motion for partial summary judgment after both parties have had time to conduct discovery on the issue of the United States's liability under FTCA.

[11] Discovery is extended for four months from the date this order is docketed.