FILED IN CHAMBERS
U.S.D.C. Atlanta

JUN 21 2006

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DEREK CLINTON DENTON,

   Plaintiff,

 v.

UNITED STATES OF AMERICA, et al.,

   Defendants.

CIVIL ACTION

NO. 1:04-CV-3285-RLV

  This matter comes before the court on motions for summary judgment filed by defendants Jenelle M. Foote, M.D., Midtown Urology, P.C., and Tenet Healthsystem GB, Inc.,[1] [Doc. Nos. 110 and 123] and the plaintiff's motions to defer ruling on the defendants' motions for summary judgment pursuant to Federal Rule of Civil Procedure Rule 56(f) [Doc. Nos. 118 and 140].

## I. Factual Background

  The following facts are gleaned from the court's review of the record, parties' submissions, and the briefs submitted by the parties. On the evening of December 2, 2002, the plaintiff, Derek Clinton Denton, was brought to Atlanta Medical Center from the Atlanta Federal Penitentiary, where he was incarcerated. The

---

  [1] In the body of this order, Dr. Jenelle M. Foote, Midtown Urology, P.C., and Tenet Healthsystem GB, Inc., are collectively known as the "non-federal defendants." Tenet Healthsystem GB, Inc., incorporated by reference both the causation arguments included in Dr. Foote and Midtown Urology, P.C.'s brief in support of their motion for summary judgment as well as their statement of undisputed facts [Doc. No. 123].

plaintiff's medical records indicate that upon arrival at AMC, he was suffering from a prolonged erection--a condition known as priapism--starting earlier that day. The emergency department physician at AMC called Dr. Jenelle M. Foote, about the plaintiff's condition. There is a factual dispute in the record as to whether Dr. Foote approved of or actually recommended the plan of initial treatment using "aggressive IV hydration" and "[subcutaneous] Terbutaline." However, during the evening of December 2, 2002, the plaintiff was treated by physicians in the AMC emergency department through the ordering and administration of additional doses of Terbutaline. Despite treatment with Terbutaline, the plaintiff's priapism continued. Following the final dose of Terbutaline administered to the plaintiff, Dr. Foote was contacted at home and was notified that the plaintiff's priapism had remained unresolved despite treatment with Terbutaline and IV hydration.

It is undisputed that Dr. Foote was contacted on two occasions regarding the plaintiff's condition: first, after the plaintiff was initially seen, when Dr. Foote either agreed with or recommended the planned treatment using "IV hydration" and Terbutaline; and, second, when Dr. Foote had called into work after the final dose of Terbutaline had been administered to the plaintiff. The plaintiff now allegedly suffers from erectile dysfunction ("ED").

The plaintiff's expert, Dr. George F. Ellis, states:

[It is more probable than not, indeed almost certain, that it was too late to prevent Mr. Denton from suffering

2

> the permanent significant ED he has suffered. More likely than not, his permanent ED is total ED. . . . Permanent total ED is a natural probable consequence, reasonably to be expected from just the repeated episodes of priapism that Mr. Denton suffered before seeking treatment on November 23, November 29, and December 2. . . . [I]t is almost certain that the Atlanta Medical Center could not prevent Mr. Denton from suffering permanent significant ED, which likely is permanent total ED.

Furthermore, Dr. Ellis states:

> As noted above, however, it is more probable than not that by the time Mr. Denton arrived at the Atlanta Medical Center it was too late to prevent Mr. Denton from suffering the permanent significant ED he has suffered.

Relying upon his expert, the plaintiff draws the conclusion that, if the federal defendants are liable for causing plaintiff to suffer ED, they are liable for all of plaintiff's ED.

However, Dr. Ellis's declaration continues:

> Nonetheless, delay at the Atlanta Medical Center proximately caused some additional tissue damage. This additional tissue damage may have increased the extent of Mr. Denton's permanent ED. The degree to which it may have done so, however, cannot reasonably be determined by accepted medical knowledge or principles. That 90 or 95% (or any other particular percentage) of delay in proper treatment of Mr. Denton's priapism can be attributed to federal prison officials and medical staff, and the remaining percentage of the delay attributed to the Atlanta Medical Center staff, does not mean that delay by the former proximately caused 90 to 95% (or any particular percentage) of Mr. Denton's ED, while the latter proximately caused the rest. The rate of tissue damage caused by priapism and the rate by which increases in tissue damage increase the extent of resulting ED are not known in a way that reasonably would allow mathematical determination of this kind.

Based upon above the passage, the plaintiff also draws the

3

alternative conclusion, "if AMC delay caused some ED, the federal defendants still would be liable for all of the ED but the non-federal defendants would be jointly liable with them, because the amount that may have been caused by the non-federal defendants cannot be separately determined" [Doc. No. 119].

On March 15, 2006, and April 14, 2006, the non-federal defendants filed motions for summary judgment, in which they argue that they are entitled to dismissal of the claims against them because the plaintiff "is unable to bring forth evidence establishing that these Defendants are liable to Plaintiff in any way, and Plaintiff has failed to assert that his injuries were proximately caused by any action or inaction on the part of these Defendants."

In response, the plaintiff argues that there is general agreement between him and the non-federal defendants on the question of causation. Specifically, the plaintiff states, "[G]iven Mr. Denton's history of multiple lengthy episodes of priapism, any alleged erectile dysfunction would have been, to a reasonable degree of medical probability, total and permanent before Mr. Denton arrived at AMC." However, the plaintiff has also posed and continues to adhere to an alternative theory of causation, i.e., the portion of the ED caused by delay at the AMC and the portion caused by the federal defendants cannot be separately determined. Therefore, the plaintiff argues, "Thus,

even if [the] AMC delay may have caused some of the ED, the federal defendants still would be liable for all of the ED (and the non-federal would be jointly liable with them), because the amount that may have been caused by the non-federal defendants cannot be separately determined." On this point, the plaintiff's expert states:

> At the Atlanta Medical Center, nearly five hours elapsed from the time Mr. Denton arrived (2010 hrs) until his erection was resolved by aspiration and irrigation (0100 hrs). This delay breached the standard of care--the obligation to exercise a reasonable degree of care and skill. The medical records show that Dr. Abernathy, the attending physician whom [sic] I have been informed was Dr. Goldstein, and urologist Dr. Foote were responsible for this breach. When Mr. Denton's erection was unresponsive for more than twenty minutes to the terbutaline that was administered beginning at 2117 hrs, aspiration of his penis should have been promptly performed. It was not performed, however, until more than three hours later. Tissue damage likely occurred throughout this time.

The plaintiff argues that given the two alterative theories on causation the court should either deny the non-federal defendants' current motions for summary judgment or the court should find that the federal defendants caused the plaintiff's injury.

As another alternative, the plaintiff argues that this court should defer ruling on the non-federal defendants' motions for summary judgment pursuant to Rule 56(f). Specifically, the plaintiff argues:

> If defendants Foote and Midtown Urology were to be awarded summary judgment now on the ED causation issue on which they agree with plaintiff's expert, but plaintiff

later were denied summary judgment against the federal defendants on this same issue because the federal defendants later produce an expert who disagrees with Dr. Ellis and asserts that the non-federal defendants caused all or part of the plaintiff's ED, the injustice would be patent.

Plaintiff should not be subjected to this potential for prejudice by inconsistent rulings. To prevent this injustice, plaintiff invokes Rule 56(f) against the part of the Foote and Midtown Urology summary judgment that raises the ED causation question on which these defendants agree with plaintiff's expert, if the federal defendants are allowed to continue to invoke Rule 56(f) against plaintiff's partial summary judgment motion on causation, which addresses the same issue.

## II. Standard of Review

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his or her claim on which he or she bears the ultimate burden of proof. Id. at 322-23. Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for

trial.'" Id. at 324. Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322.

### III. Legal Analysis

As a preliminary matter, the court must decide whether the plaintiff's contingent motions to delay ruling on the non-federal defendants' motions for summary judgment pursuant to Rule 56(f) have merit.

Rule 56(f) states:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Rule 56(f) is designed to be a shelter against the precipitous entry of summary judgment. Donovan v. Nellis, 528 F. Supp. 538, 542 (N.D. Fla. 1981). The rule gives the court discretion to deny or defer the entry of summary judgment when the non-movant is unable to provide opposing affidavits.[2] A party requesting a continuance

---

[2] The court in Donovan continued:

> In a typical situation Rule 56(f) is applied where the opposing party is unable to justify his opposition because knowledge of the relevant facts is exclusively

7

under Rule 56(f) must present an affidavit with specific facts that explain the party's failure to respond to the adverse party's motion for summary judgment via counter affidavits. <u>Wallace v. Brownell Pontiac-GMC Co.</u>, 703 F.2d 525, 527 (11th Cir. 1983). The non-movant may not rely on conclusory contentions that additional discovery will produce needed but unspecified facts but must show the court how the stay will permit the non-movant to rebut the movant's contentions. <u>Id</u>.

As an attachment to his response to the non-federal defendants' motions for summary judgment, the plaintiff provides his own declaration, in which he states:

> I do not know, however, and cannot without judicial discovery procedures learn, whether the United States of America, Mr. Yost, Mr. Wiley, Dr. Negron, Dr. Carbonell, and Dr. Gonzalez disagree with and have evidence (i.e., the opinion of a qualified expert) that is contrary to the agreement of Dr. Foote and Dr. Ellis on this question. If the United States of America, Mr. Yost, Mr. Wiley, Dr. Negron, Dr. Carbonell, and Dr. Gonzalez have

---

> with or largely within the control of the moving party. Under the rule the non-movant is expected to present an affidavit showing that knowledge of the facts is outside the control of the non-movant and describing his unsuccessful attempts to obtain those facts.

<u>Donovan</u>, 528 F. Supp. at 542.

This court previously granted the federal defendants' motion to defer ruling on the plaintiff's motion for partial summary judgment pursuant to Rule 56(f) because the federal defendants had demonstrated that they did not have adequate discovery to counter the plaintiff's previous motion for partial summary judgment [Doc. No. 95].

8

such evidence I need discovery in order to obtain and present it.

However, the above declaration is insufficient justification to defer ruling on the non-federal defendants' motions for summary judgment. In fact, the plaintiff has failed to proffer any cogent legal justification under Rule 56(f) to delay ruling on the non-federal defendants' motions for summary judgment. In reaching this conclusion, the court is cognizant that Rule 56(f) is intended to address the need for time to procure affidavits to oppose motions for summary judgment. However in this case, the plaintiff is not seeking time to procure an affidavit to refute the non-federal defendants motions for summary judgment. Quite the contrary, the plaintiff, in another motion which was previously pending before the court, filed his own motion for partial summary judgment [Doc. No. 119]. In the plaintiff's motion for partial summary judgment, he sought to establish that the federal defendants, not the non-federal defendants caused the plaintiff's injury.[3] Therefore, the

---

[3] In their response to the plaintiff's motions to defer pursuant to Rule 56(f), the non-federal defendants argue:

> Mr. Denton's concerns regarding how the United States may choose to defend the claims against it at trial once Dr. Foote is no longer a defendant, provide no grounds to delay a ruling on Dr. Foote's Motion for Summary Judgment. No authority or valid legal basis for delaying disposition of that motion has been offered.

The court agrees. Therefore, the court gave the plaintiff's arguments regarding the federal defendants' possible or future arguments regarding causation no weight.

court views the plaintiff's motions to defer ruling on the non-federal defendants motions for summary judgment as tactical ploys to keep the non-federal defendants in the suit for as long as possible. Therefore, the plaintiff's motions to defer ruling on the non-federal defendants' motions for summary judgment are DENIED.

Next, the court must actually examine the merits of the non-federal defendants' motions for summary judgment. In evaluating the merits of the non-federal defendants' motions for summary judgment, however, the court concludes that questions of material fact exist with regard to the causation of the plaintiff's injuries and that, consequently, summary judgment is inappropriate at this time.

In reaching this conclusion, the court notes that the non-federal defendants failed to submit their own expert to dispute the plaintiff's expert on the issue of causation. The fact that the plaintiff's own expert posits two alternative, seemingly contradictory, theories on causation is insufficient to warrant granting summary judgment to the non-federal defendants. Such seeming inconsistency is a matter for cross-examination and eventual determination by a jury.

Therefore, the court concludes that the plaintiff's own expert muddles the waters of causation. At least at this stage in the litigation with the plaintiff's adherence to his expert's two

alternative theories of causation, the non-federal defendants are unable to demonstrate that there is no dispute of material fact on the issue of causation.

As an alterative basis for granting summary judgment in their favor, the non-federal defendants argue that the plaintiff has not produced sufficient evidence with regard to the essential elements of his claims against them.  Specifically, defendant Dr. Foote argues that the plaintiff can present no evidence that the treatment at the AMC was delayed as a result of action or inaction on the part of Dr. Foote.  Therefore, the non-federal defendants argue that the plaintiff is unable to prove that Dr. Foote or the other non-federal defendants breached the standard of care owed to the plaintiff.  Additionally, Dr. Foote argues that because the plaintiff can produce no evidence that any alleged negligence by Dr. Foote proximately caused any injury to plaintiff, summary judgment should be granted.

However, the court did not give these arguments significant weight.  In reaching this conclusion, the court again examined the plaintiff's expert declaration.  The relevant passage of Dr. Ellis' declaration states:

> At the Atlanta Medical Center, nearly five hours elapsed from the time Mr. Denton arrived (2010 hrs) until his erection was resolved by aspiration and irrigation (0100 hrs).  This delay breached the standard of care--the obligation to exercise a reasonable degree of care and skill.  The medical records show that Dr. Abernathy, the attending physician whom I have been informed was Dr. Goldstein, and urologist Dr. Foote were responsible for

11

this breach. When Mr. Denton's erection was unresponsive for more than twenty minutes to the terbutaline that was administered beginning at 2117 hrs, aspiration of his penis should have been promptly performed. It was not performed, however, until more than three hours later. Tissue damage likely occurred throughout this time.

At this stage in the litigation, without complete discovery, the court concludes that Dr. Ellis' uncontradicted opinion regarding the non-federal defendants' alleged breach of the standard of care owed to the plaintiff as well as the non-federal defendants' action or inaction being the proximate cause of at least some portion of the plaintiff's injuries is minimally sufficient to defeat the non-federal defendants' summary judgment motions.

## IV. Conclusion

For the above reasons, the plaintiff's motions to defer ruling on the non-federal defendants' motions for summary judgment pursuant to Rule 56(f) are DENIED in their entirety [Doc. Nos. 118 and 140]. Furthermore, the non-federal defendants' motions for summary judgment are also DENIED [Doc. Nos. 110 and 123]. The non-federal defendants are free to re-file their motions for summary judgment after the discovery in this case has concluded.

SO ORDERED, this 21ST day of June, 2006.

_____
ROBERT L. VINING, JR.
Senior United States District Judge